**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO: 1:10-CIV-24063-MORENO**

|  |  |
|---|---|
| MOTOROLA MOBILITY, INC., | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| vs. | ) |
|  | ) |
| MICROSOFT CORPORATION, | ) |
|  | ) |
| Defendant. | ) |

**DEFENDANT'S MOTION TO TRANSFER THIS ACTION TO THE WESTERN DISTRICT OF WASHINGTON AND ACCOMPANYING MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

STATEMENT OF FACTS ........................................................................................................1

I.     DISPUTES ALREADY PENDING IN WASHINGTON .................................................1

       A.     Microsoft v. Motorola: Alleged Patent Infringement Related to Motorola's Android Device (Filed in W.D. Wash.) (WDWA-1577).........................................1

       B.     Microsoft v. Motorola: Alleged Breach of Contract Related to Wi-Fi and H.264 Video Compression Standard (Filed in W.D. Wash.) (WDWA-1823) ..................2

       C.     Motorola v. Microsoft: Alleged Patent Infringement Related to Wi-Fi and H.264 Compression Standard (Windows 7 and Internet Explorer 9) (Filed in Wis., Transferred to W.D. Wash.) (WDWA-343) ...........................................................2

       D.     Motorola v. Microsoft: Alleged Patent Infringement Related to Xbox 360 Gaming System (Filed in W.D. Wis., Transferred to W.D. Wash.) (WDWA-595)..............4

II.    MOTOROLA'S FLORIDA COMPLAINT.....................................................................5

ARGUMENT .......................................................................................................................6

I.     THE PRIVATE INTEREST FACTORS STRONGLY FAVOR TRANSFER BECAUSE THE CENTER OF GRAVITY OF THIS DISPUTE IS IN THE WESTERN DISTRICT OF WASHINGTON. ........................................................................................................8

       A.     The Alleged Infringement of Motorola's Patents Occurred in Washington and the Majority of Witnesses Reside There.......................................................................9

       B.     This Action Does Not Have any Meaningful Connection to the Southern District of Florida.................................................................................................................11

       C.     A Transfer Would Provide Easier Access to Sources of Proof. ............................13

II.    THE PUBLIC INTEREST WEIGHS IN FAVOR OF TRANSFER.................................14

CONCLUSION..................................................................................................................19

## **TABLE OF AUTHORITIES**

**CASES**                **PAGE(S)**

*Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.*,
512 F. Supp. 2d 1039 (S.D. Tex. 2007) ...........................................................................9, 13

*Apple Inc. v. Motorola, Inc.*,
No. 3:10-cv-662 (W.D. Wis. Dec. 23, 2010) ...........................................................10, 15, 21

*Balloveras v. Purdue Pharma Co.*,
No. 04-20360-CIV, 2004 WL 1202854 (S.D. Fla. May 19, 2004) (Moreno, J.)................8, 13

*Breckenridge Pharm., Inc. v. KV Pharm. Co.*,
No. 08-80963-CIV, 2009 WL 1404698 (S.D. Fla. May 19, 2009)......................................7, 12

*Castleberg v. Davidson*,
No. 10-cv-647-bbc (W.D. Wis. Dec. 30, 2010) ......................................................................23

*Cellularvision Techn. & Telecomm., L.P. v. Alltel Corp.*,
508 F. Supp. 2d 1186 (S.D. Fla. 2007) ..........................................................7, 12, 13, 16, 22

*Geltech Solutions, Inc. v. Marteal, Ltd.*,
No. 09-CV-81027, 2010 WL 1791423 (S.D. Fla. May 5, 2010) ......................................14, 21

*Global Innovation Tech. Holdings, LLC v. Acer Am. Corp.*,
634 F. Supp. 2d 1346 (S.D. Fla. 2009) ...............................................................15, 20, 21, 22

*GTE Wireless, Inc. v. Qualcomm, Inc.*,
71 F. Supp. 2d 517 (E.D. Va. 1999) .................................................................................9, 14

*In the Matter of Certain Mobile Devices, Associated Software, and Components Thereof*,
Investigation No. 337-TA-744..............................................................................................2, 47

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)........................................................................................13, 18

*Laitram Corp. v. Morehouse Indus., Inc.*,
Civ. A. No. 93-2809, 1194...................................................................................................9, 14

*Manuel v. Convergys Corp.*,
430 F.3d 1132 (11th Cir. 2005) ............................................................................7, 12, 13, 19

*Motorola Mobility, Inc. v. Apple, Inc.*,
Case No. 10-23580-Civ-UNGARO (S.D. Fla.) ...............................................................10, 15

*Nolan Helmets S.p.A v. Fulmer Helmets, Inc.*,
No. 95-6401-CIV, 1995 WL 789505 (S.D. Fla. Nov. 27, 1995) ................................10, 15, 22

*Poncy v. Johnson & Johnson*,
  414 F. Supp. 551 (S.D. Fla. 1976) ...................................................................6, 11

*Saint-Gobain Calmar v. Nat'l Prods. Corp.*,
  230 F. Supp. 2d 655 (E.D. Pa. 2002) ................................................................9, 14

*Trace-Wilco, Inc. v. Symantec Corp.*,
  No. 08-80877, 2009 WL 455432 (S.D. Fla. Feb. 23, 2009) ........................... passim

*Viviant Pharms., LLC v. Clinical Formula, LLC*,
  No. 10-21537-Civ, 2011 WL 1303218 (S.D. Fla. Mar. 31, 2011) .....................7, 12

**STATUTES**

28 U.S.C. 1404.............................................................................................1, 6, 7, 18, 19

The Court should transfer this patent infringement case to the Western District of Washington pursuant to 28 U.S.C. § 1404.  There are already four related cases between the parties in the Western District of Washington, and transferring this case allows the parties' disputes to be resolved efficiently in that same forum.  The Western District of Washington has a much greater relationship to the parties' dispute in this case and is a more convenient forum.  The Southern District of Florida, to the contrary, has little – if any – connection with the dispute.  Given that the complaint here alleges that Microsoft infringed various Motorola's patents, the majority of the relevant witnesses and sources of proof are located at Microsoft's headquarters in Redmond, Washington.  The interest of the parties as well as the interests of justice will be served by transferring the matter to the Western District of Washington.

## STATEMENT OF FACTS

Defendant Microsoft Corp. ("Microsoft") is a Washington corporation founded in Bellevue, Washington and currently based in Redmond, Washington, where it has been headquartered since 1986.  Compl. at ¶ 3; *see also* Declaration of David Kaefer attached hereto as Exhibit A ("Kaefer Decl.") at ¶ 3 n.1, Ex. 1.  Microsoft employs nearly 40,000 people in the Puget Sound (Seattle) region and occupies nearly 8 million square feet of facilities at its Redmond campus.  Kaefer Decl. at ¶ 4, n.2, Ex. 1.  Plaintiff Motorola Mobility, Inc. ("Motorola") is a Delaware corporation with its principal places of business in Schaumburg and Libertyville, Illinois.  Compl. at ¶ 2.

## I.     DISPUTES ALREADY PENDING IN WASHINGTON

### A.     Microsoft v. Motorola: Alleged Patent Infringement Related to Motorola's Android Device (Filed in W.D. Wash.) (WDWA-1577)

Microsoft sued Motorola in the Western District of Washington on October 1, 2010, accusing Motorola of infringing nine of Microsoft's patents in conjunction with Motorola's

Android device.  *See* D.E. 1 in 2:10-cv-1577 (W.D. Wash. Oct. 1, 2010) ("WDWA-1577")

(Declaration of Curtis B. Miner in Support of Microsoft's Motion to Transfer Venue attached

hereto as Exhibit B ("Attorney Decl.") at ¶ 2, Ex. 1).  After Microsoft filed a Complaint with the

United States International Trade Commission ("ITC") in connection with the same nine patents

(*In the Matter of Certain Mobile Devices, Associated Software, and Components Thereof*,

Investigation No. 337-TA-744), the parties agreed to stay WDWA-1577 while the ITC

proceeding is pending.  D.E. 34 in WDWA-1577.  *Id.* at ¶ 3, Ex. 2.[1]

> **B.      Microsoft v. Motorola: Alleged Breach of Contract Related to Wi-Fi and
>          H.264 Video Compression Standard (Filed in W.D. Wash.) (WDWA-1823)**

On November 9, 2010, Microsoft again sued Motorola in the Western District of

Washington alleging breach of contract, promissory estoppel, and waiver.  This action relates to

Motorola's promises to offer licenses for certain patents that Motorola claims are necessary to

use the 802.11 wireless standard (Wi-Fi) and the H.264 video compression standard.  *See* D.E. 1

in No. 2:10-cv-01823 (W.D. Wash. Nov. 9, 2010) ("WDWA-1823") (Attorney Decl. at ¶ 4, Ex.

3).  In WDWA-1823, Microsoft seeks, *inter alia*, relief declaring Motorola in breach of its

binding promises and limiting damages for Microsoft's use of Motorola's patents caused by

Microsoft's compliance with the Wi-Fi and H.264 standards.  *Id.*

> **C.      Motorola v. Microsoft: Alleged Patent Infringement Related to Wi-Fi and
>          H.264 Compression Standard (Windows 7 and Internet Explorer 9) (Filed in
>          Wis., Transferred to W.D. Wash.) (WDWA-343)**

Subsequently, four additional lawsuits were filed between the parties, including three in

the Western District of Wisconsin (Case Nos. 10-cv-699 ("WDWI-699"), 10-cv-700 ("WDWI-

---

[1]   The ITC was established to prevent the unlawful importation of products that violate U.S.
patents.  If a violation is found, the ITC automatically issues an injunction that precludes a
defendant from importing infringing products into the United States.  The ITC, however, cannot
award money damages.  Thus, as was the case here, parties often file an infringement action in

700"), and 10-cv-00826 ("WDWI-826")).  Attorney Decl. at ¶¶ 5-7; Exs. 4-6.  In the WDWI-699

case, filed November 10, 2010, Motorola claims that Windows 7 and Internet Explorer 9 infringe

certain patents because of their support for the H.264 video compression standard.  On January

25, 2011, Microsoft answered Motorola's complaint and counterclaimed, accusing Motorola of

breaching its obligation to license the asserted Motorola patents under reasonable and non-

discriminatory terms.  Microsoft is also accusing Motorola of violating two Microsoft graphical

user interface patents.  The Microsoft '780 patent relates to a loading status element in a

hypermedia browser and is infringed by various Motorola Android devices, including the Droid

X, Droid 2, Devour and Charm.  The '582 patent relates to detecting user input on a touch screen

and is infringed by various Motorola Android devices, including the Droid X, Droid 2, Cliq XT

and i1.

On December 21, 2010, Microsoft moved to transfer the WDWI-699 case to the Western

District of Washington because Motorola's infringement accusations involved Microsoft's use of

the same Wi-Fi and H.264 standards at issue in WDWA-1823.  Microsoft also argued that the

relevant documents and witnesses would be in Washington.  The Wisconsin court agreed that the

Western District of Washington was the more appropriate forum.  D.E. 44 in 3:10-cv-00699-bbc

(W.D. Wis.) (the "WDWA-343 Transfer Order") (Attorney Decl. at ¶ 8, Ex. 7).  In transferring

the WDWI-699 case to the W.D. Washington, the court noted that "defendant's principal place

of business is in the W.D. Washington and at least one of the accused products (Windows 7) was

designed there.  Defendant's employees responsible for the development and sale of Windows 7

work in that district." *Id.* at Ex. 7, p. 3.  The WDWI-699 case is now pending in the Western

District of Washington as Case No. 2:11-cv-00343 ("WDWA-343").[2]

     **D.**     **Motorola v. Microsoft: Alleged Patent Infringement Related to Xbox 360
Gaming System (Filed in W.D. Wis., Transferred to W.D. Wash.) (WDWA-
595)**

In the WDWI-826 case – another patent infringement case filed by Motorola in

Wisconsin, this time on December 27, 2010 – Motorola has attacked the Xbox 360 gaming

system.  On January 25, 2011, Microsoft answered Motorola's complaint and asserted three of its

graphical user interface patents, the '718, '664 and '666, against Motorola Android devices,

including various ones of the Droid X, Droid 2, Backflip, Charm Cliq and i1.  Microsoft also

asserted a fourth patent relating to a notification system such as an alarm (the '276) against

various Motorola Android devices, and a fifth patent relating to flash memory file system (the

'642) against various Motorola Android devices and network router products.  Although the

WDWI-826 case does not involve the Wi-Fi or H.264 standards, Microsoft moved to transfer the

case based on the fact that the research and development of the Xbox 360 and Kinect took place

in the Western District of Washington, and all relevant documents and source code resided there.

The court agreed, transferring the case on the basis that many of the witnesses with knowledge of

the relevant facts are in Washington, and relevant documents, emails, files, source code, and

other technical documentation are also in Washington.  *See* D.E. 41 in the WDWA-595 Transfer

Order at pp. 3, 5 (Attorney Decl. at ¶ 9, Ex. 8) ("Defendant's principal place of business is in the

Western District of Washington and all witnesses and documents relevant to this claim are

---

[2]   Defendant also moved to transfer Case No. 10-cv-700 to the Western District of Washington.
The court has not yet ruled on the motion because the case is stayed pending final resolution by
the ITC in *In the Matter of Certain Mobile Devices, Associated Software, and Components
Thereof*, Investigation No. 337-TA-744.  *See* D.E. 41 in 3:10-cv-00826-bbc (W.D. Wis.) (the
"WDWA-595 Transfer Order") at p. 2 (Attorney Decl. at ¶ 9, Ex. 8).

located there.").[3]  Although the court found no overlap between the cases then pending in

Washington and the case before it in Wisconsin, the court found that the convenience factors

alone favored transfer.  *Id.* at pp. 9-10; *see also* p. 6 ("a fair amount of weight should be given to

the fact that defendant's headquarters, witnesses and documentation are in Washington").  The

WDWI-826 case is now pending in the Western District of Washington as Case No. 2:11-cv-

00595 ("WDWA-595").

## II.    MOTOROLA'S FLORIDA COMPLAINT

This is a vast and complicated case that involves seven Motorola patents asserted against

almost a dozen different Microsoft products ranging from operating systems to messaging

systems.  Microsoft's counterclaims assert seven patents against over 20 different Motorola

products, including its Android devices and digital video recorders.  Resolution of this case will

involve the construction and interpretation of over fifty individual claim limitations of the many

patents in suit.

On November 10, 2010, Motorola filed this case in the Southern District of Florida

accusing Microsoft of infringing U.S. Patent Nos. 5,502,839 ("the '839 patent"), 5,764,899 ("the

'899 patent"), 5,784,001 ("the '011 patent"), 6,272,333 ("the '333 patent"), 6,408,176 ("the '176

patent"), 6,757,544 ("the '544 patent") and 6,983,370 ("the '370 patent") (collectively, "the

asserted patents").  Compl. at ¶¶ 7-13.  Motorola's complaint alleges – without specificity and in

a conclusory manner – that almost a dozen of Microsoft products, including Windows 7,

Windows Vista, Windows Phone 7, Windows Mobile 6.5, Microsoft Exchange Server, Live

Messenger, Live Hotmail, and Bing Maps – all developed in Washington – infringe these

patents.  *Id.* at ¶¶ 14-62.

---

[3]   Unpublished slip opinions are attached to this memorandum as Group Exhibit C.

On December 23, 2010, Microsoft answered Motorola's Complaint and filed a counter-claim, alleging infringement of U.S. Patent Nos. 6,791,536 ("the '536 Patent"), 6,897,853 ("the '853 Patent"), 7,024,214 ("the '214 Patent"), 7,493,130 ("the '130 Patent"), 7,383,460 ("the '460 Patent"), 6,897,904 ("the '904 Patent"), and 6,785,901 ("the '901 Patent").  Counterclaim at ¶¶ 8-14.  The counterclaim alleged that certain Motorola Android devices and digital video recorders infringe these Microsoft patents.  *Id.* at ¶¶ 15-53.

Motorola's Complaint consists of generic, conclusory allegations, providing only a list of Microsoft products that were alleged to infringe each of the seven Motorola patents.  Since then, Motorola has provided new listings of accused products in which it dropped certain Microsoft products that were originally named in the Complaint and replaced them with new accused products.  On April 15, 2011, Motorola served infringement contentions and claim charts that purport to identify how Microsoft's products infringe Motorola's patents.  Motorola's infringement contentions only further underscore that the appropriate venue for this action is the Western District of Washington.

## ARGUMENT

The Court should transfer this action to the Western District of Washington pursuant to 28 U.S.C. § 1404.  Section 1404(a) allows a district court to transfer if (1) the transferee court is in a district where the action may have originally been brought, and (2) the transfer is in the interests of justice.  28 U.S.C. 1404(a); *Poncy v. Johnson & Johnson*, 414 F. Supp. 551, 553 (S.D. Fla. 1976).  This action satisfies these factors:  Given Microsoft's headquarters in Redmond, Washington, there can be no dispute that venue is proper in the Western District of Washington.  Further, the interests of justice support transfer so that one court – which is also the more convenient court – resolves the intertwined patent issues in five related cases, *four of which are already pending in the Western District of Washington*.

6

In analyzing a motion to transfer under Section 1404(a), courts consider the following private interest and public interest factors:  (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.  *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).[4]

The private interest factors – such as the locus of operative facts (*i.e.*, the case's center of gravity) and the convenience and location of relevant witnesses and other sources of proof – favors transferring this case to the Western District of Washington.  Washington provides easier access to evidence, is more convenient, and has a much closer connection to the parties' dispute than the Southern District of Florida.  Although the public interest factors are of lessened importance where, as here, the private interest factors strongly favor transfer, the public interest factors also support the transfer of this case. There is no particular local interest in the subject matter of this dispute between Motorola, headquartered in Illinois, and Microsoft, headquartered in Washington, whereas the Western District of Washington clearly has greater interest in the resolution of the dispute.  Moreover, factors of judicial economy and consistency of rulings, particularly in connection with overlapping discovery, strongly favor transferring this case to

---

[4]   *See also Viviant Pharms., LLC v. Clinical Formula, LLC*, No. 10-21537-Civ, 2011 WL 1303218, at *7 (S.D. Fla. Mar. 31, 2011) (granting defendant's motion to transfer venue based on *Manuel* factors); *Breckenridge Pharm., Inc. v. KV Pharm. Co.*, No. 08-80963-CIV, 2009 WL 1404698, at *3-*6 (S.D. Fla. May 19, 2009) (same); *Cellularvision Techn. & Telecomm., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189-93 (S.D. Fla. 2007) (granting motion to transfer based on "(1) convenience of the parties; (2) convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to secure the presence of unwilling witnesses; (5) the cost of obtaining the presence of witnesses; and (6) the public interest").

Washington where the four other United States District Court Cases between the parties are pending.

I.     **THE PRIVATE INTEREST FACTORS STRONGLY FAVOR TRANSFER BECAUSE THE CENTER OF GRAVITY OF THIS DISPUTE IS IN THE WESTERN DISTRICT OF WASHINGTON.**

"[W]here the operative facts underlying the action occurred outside the district in which the action is brought," as is the case here, a plaintiff's choice of forum is not entitled to any deference and the action should be transferred. *Balloveras v. Purdue Pharma Co.*, No. 04-20360-CIV, 2004 WL 1202854, *1 (S.D. Fla. May 19, 2004) (Moreno, J.). In patent infringement cases, courts have granted motions to transfer venue when a plaintiff has chosen a forum that is not its home forum and is not the "center of gravity of the accused activity." *Cellularvision*, 508 F. Supp. 2d at 1189; *see also Trace-Wilco, Inc. v. Symantec Corp.*, No. 08-80877, 2009 WL 455432, at *2 (S.D. Fla. Feb. 23, 2009) ("In patent infringement actions, the preferred forum is that which is the center of gravity of the accused activity," and holding that a court may "disregard plaintiff's choice of forum in cases involving claims of patent infringement"); *Amazon.com*, 404 F. Supp. 2d at 1260 (granting defendants' motion to transfer venue where "the alleged infringement occurred on defendant's websites, which were designed and are maintained at defendants' business headquarters"); *Amini Innovation*, 512 F. Supp. 2d at 1044-46 (granting defendant's motion to transfer venue where "'center of gravity' of the alleged infringement is most likely New Jersey, where [defendant's] principal place of business is located, the marketing and sales decisions occurred, and the documents relative to the accused products are located").[5] "[T]he district court ought to be as close as possible to the milieu of the

---

[5]  *See also Saint-Gobain Calmar v. Nat'l Prods. Corp.*, 230 F. Supp. 2d 655, 660 (E.D. Pa. 2002) (granting defendant's motion to transfer venue to home district because "the central activities relevant to this patent infringement action" occurred there); *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519-20 (E.D. Va. 1999) (granting defendant's motion to

infringing device and the hub of activity centered around its production." *Trace-Wilco,* 2009 WL 455432, *2 (citations omitted) (granting patent infringement defendants' motion to transfer case closer to their headquarters). As the *Trace-Wilco* court explained:

> [I]n intellectual property infringement suits, which often focus on the activities of the alleged infringer, its employees, and its documents . . . the location of the alleged infringer's principal place of business is often the critical and controlling consideration in adjudicating transfer of venue motions.

*Id.* at *3 (quoting *Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.*, 512 F. Supp. 2d 1039, 1044 (S.D. Tex. 2007) (granting patent infringement defendant's motion to transfer venue to district where it was headquartered)). As is illustrated below, the Western District of Washington is the center of gravity and this action should be transferred there.

### A.   The Alleged Infringement of Motorola's Patents Occurred in Washington and the Majority of Witnesses Reside There.

As Motorola recognized in separate litigation brought by Apple, Inc., in which Motorola is seeking to transfer a case to Delaware, a plaintiff's choice of forum is given "no weight" when a plaintiff does not file suit in its home forum. *See* Opening Brief In Support Of Defendants' Motion To Dismiss Or To Sever And Transfer Claims In Plaintiffs' Amended Complaint Based On Patents At Issue In An Earlier-Filed Delaware Action (Dkt. 29) ("Motorola's Brief in Support of Transfer"), *Apple Inc. v. Motorola, Inc.*, No. 3:10-cv-662 (W.D. Wis. Dec. 23, 2010)

---

transfer venue to home district because it is "unquestionably the center of production of the cellular phones, and the hub of activity in the instant action"); *Laitram Corp. v. Morehouse Indus., Inc.*, Civ. A. No. 93-2809, 1994 WL 97818, at *4 (E.D. La. Mar. 21, 1994) (granting defendant's motion to transfer to home district because allegedly infringing products "were designed, developed, and manufactured" there, and thus "all of the documents and records regarding the design, development, manufacturing, marketing, and sales" of the products were located there, and because only identified witnesses were located in the defendant's home district).

at p. 12 (Attorney Decl. at ¶ 10, Ex. 9).[6]  Indeed, it was for this reason that the Western District

of Wisconsin transferred the WDWI-699 and WDWI-826 cases that Motorola had filed against

Microsoft to the Western District of Washington.  *See* WDWA-595 Transfer Order at p. 5

(Attorney Decl. at ¶ 9, Ex. 8) ("Defendant's principal place of business is in the Western District

of Washington and all witnesses and documents relevant to this claim are located there.");

WDWA-343 Transfer Order at p. 2 (Attorney Decl. at ¶ 8, Ex. 7) ("I conclude that the Western

District of Washington is clearly more convenient than this district . . ."); 3 ("[D]efendant's

principal place of business is in the Western District of Washington and at least one of the

accused products (Windows 7) was designed there.  Defendant's employees responsible for both

the development and sale of Windows 7 work in that district.").  "The convenience of witnesses

is probably the most important factor in determining whether transfer is appropriate." *Nolan*

*Helmets S.p.A v. Fulmer Helmets, Inc.*, No. 95-6401-CIV, 1995 WL 789505 at *2 (S.D. Fla.

Nov. 27, 1995).

In adjudicating Microsoft's motion to transfer, the focus is on the location of Microsoft's

alleged infringement, which indisputably occurred in Washington.  *See Trace-Wilco*, 2009 WL

455432, at *3 ("the center of gravity of the alleged infringement occurred in northern California,

where Defendant maintains its global headquarters, where the research and development of the

allegedly infringing products occurred, and where the decisions regarding marketing and sales of

the accused products were made").  Microsoft is headquartered in Redmond, Washington.

---

[6]   In another action within this District, defendant Apple Inc. filed a motion to transfer venue to
the Western District of Wisconsin.  *See Motorola Mobility, Inc. v. Apple, Inc.*, Case No. 10-
23580-Civ-UNGARO (S.D. Fla.).  During the court's planning and scheduling conference,
which was held prior to the conclusion of briefing, the court noted that it "seems to have been the
victim of some forum shopping" (January 14, 2011 Transcript at p. 21), and stated, "I don't
really know why you came here." *Id.* at p. 23.  (Attorney Decl. at ¶ 11, Ex. 10).  Apple Inc.'s
motion to transfer is still pending.

Kaefer Decl. at ¶ 3.  Microsoft's main research and development facilities are located in Redmond, Washington.  *Id.* at ¶ 6.  Microsoft's team of developers and engineers who currently work on the accused products are employed in Washington.  *Id.* at ¶¶ 7-10.  Moreover, in one of a series of broad discovery requests, Motorola asked Microsoft to identify persons who are the "most knowledgeable" with regard to fifteen separate topics that pertain to Microsoft's accused products.  *See* Supplemental Response to Motorola's Interrogatory No. 10 (Kaefer Decl. at ¶ 12, Ex. 2).  Microsoft has thus far identified sixteen individuals in response to this interrogatory, all of whom work in the Western District of Washington.  *Id.*

None of the inventors of the Microsoft patents at issue reside in Florida.  Kaefer Decl. at ¶¶ 13, 14, Ex. 3; Attorney Decl. at ¶ 12, Ex. 11.  Microsoft's patents identify inventors who worked on the West Coast.  Kaefer Decl. at ¶ 13.  Accordingly, the Western District of Washington is the more appropriate forum.  *See Cellularvision*, 508 F. Supp. 2d 1186, 1191 (S.D. Fla. 2007) (reasoning that where plaintiff listed several Florida witnesses, but "most of the witnesses that will be knowledgeable about nationwide infringement issues . . . are located in Arkansas," "[i]t seems likely that more witnesses will be inconvenienced by conducting this litigation in Florida than would be the case in Arkansas").

**B.    This Action Does Not Have any Meaningful Connection to the Southern District of Florida.**

This dispute has, at best, only the most tenuous connection to the Southern District of Florida.  Motorola alleges venue solely based on Microsoft's products being sold within the District.  Compl. at ¶ 5.  Such allegations make this District no more unique than any other federal judicial district, as Microsoft's products are sold nationwide.  *See* WDWA-343 Transfer Order at p. 5 (Attorney Decl. at ¶ 8, Ex. 7) ("[P]laintiffs do not identify any relationship this district has with the case, other than the potential sale of accused products, a relationship that

every state in the country shares.")  Motorola is a Delaware corporation with its principal places

of business in Illinois – Florida is not its home forum.  Compl. at ¶ 2.  Motorola has not

identified any Microsoft-related activity that is particular to the Southern District of Florida, nor

is Microsoft aware of any such activity.  *Cf.* WDWA-343 Transfer Order at pp. 3-5 (Attorney

Decl. at ¶ 8, Ex. 7) (where Motorola did "not point[] to a single factor related to convenience that

favors Wisconsin as a forum" and did "not identify any relationship [Wisconsin] has with this

case," transfer from Wisconsin to Washington was appropriate because, *inter alia*, Microsoft's

principal place of business is in Washington and at least one of the products at issue was

designed there); WDWA-595 Transfer Order at pp. 5-6 (Attorney Decl. at ¶9, Ex. 8) (granting

Microsoft's motion to transfer venue to Washington after reasoning that where neither party

identified party witnesses, relevant events, or sources of proof in Wisconsin, "a fair amount of

weight should be given to the fact that defendant's headquarters, witnesses and documentation

are in Washington").

    Even if one were to consider Motorola's business activities, which is not the pertinent

inquiry, Motorola cannot establish that the "center of gravity" of this case is in Florida.

Motorola's principal place of business is in Illinois.  Although Motorola has one facility located

in Plantation, Florida (as well as others located around the country), only five of the sixteen

inventors of the Motorola patents at issue may reside in Florida.[7]  Plaintiff and Counterclaim

Defendant Motorola Mobility's Patents-in-Suit ("Motorola's Patents-in-Suit"); Plaintiff and

Counterclaim Defendant Motorola Mobility, Inc.'s Initial Disclosures ("Motorola's Initial

_____

[7]   Motorola's Initial Disclosures state that Senaka Balasuriya, who resided in Illinois at the time
of the filing of Patent No. 6,757,544, resides in Florida.  Motorola's Initial Disclosures at p. 5
(Attorney Decl. at ¶ 15, Ex. 14).  Online sources, however, suggest that Mr. Balasuriya may
potentially reside in New York.  *See* www.linkedin.com/in/senaka, www.constratus.com, and
techuntangled.com/about (attached hereto as Group Exhibit D).

Disclosures") at pp. 2-7 (Attorney Decl. at ¶¶ 11, 12; Exs. 12, 13).  The remaining eleven inventors reside in Illinois, Massachusetts, Texas, and Canada.  Compl., Exs. A-G (identifying six of the sixteen inventors as residing in Florida); Motorola's Initial Disclosures at pp. 2-6 (Attorney Decl. at ¶ 14, Ex. 13) (indicating that two of the six inventors who previously resided in Florida (Douglas Kraul and Charles Batey, Jr.) have subsequently moved to Texas and Massachusetts).  Motorola's Initial Disclosures also identify nine individuals, in addition to the inventors, who are likely to have discoverable information in this matter.  Motorola has not indicated that any of these nine potential witnesses reside in Florida.  Motorola's Initial Disclosures, at pp. 6-7 (Attorney Decl. at ¶ 14, Ex. 13).[8]  In addition, Motorola has issued four third-party subpoenas to Research in Motion Corporation ("RIM"), HTC America, Inc. ("HTC"), NTI Corporation ("NTI") and Acer America Corporation ("Acer").  *Id.* at ¶ 15, Ex. 14.  RIM is located in Texas, HTC is located in Washington, and NTI and Acer are located in California.  *Id.* Motorola has also noticed seven individual witnesses for deposition in this case.  (Attorney Decl. at ¶ 16, Ex. 15).  Of those seven individuals, two reside in Washington, three reside in California, and none reside in Florida.  (Kaefer Decl. at ¶ 13).

### C.    A Transfer Would Provide Easier Access to Sources of Proof.

The bulk of the evidence regarding Motorola's patent infringement claims will be located in Washington, where Microsoft operates and developed the accused products.  Kaefer Decl. at ¶¶ 6-13, 15.  Accordingly, this factor also weighs in favor of transfer.  *See In re Genentech, Inc.*, 566 F.3d 1338, 1343-45 (Fed. Cir. 2009) (reasoning that in patent infringement cases "the bulk of the relevant evidence" is often from the defendant, and therefore "the place where the

---

[8]    Similarly, in the action that Microsoft filed against Motorola before the ITC alleging that Motorola has unlawfully imported cellular phone devices in violation of Microsoft's patents (ITC Investigation No. 336-TA-744), Motorola produced witnesses for deposition in California, Illinois and Texas.  Motorola has not produced any witnesses from Florida.

defendant's documents are kept weighs in favor of transfer to that location"); *see also Trace-Wilco*, 2009 WL 455432 at *4 ("Most documents likely to be material to the prosecution of this patent infringement case appear to be located in the Northern District of California. . . . [M]ost of the design, development, implementation, and marketing of the relevant technology took place in northern California.  Management teams in charge of the allegedly offending products are also located in northern California.  On-site inspections of the technology at issue would likely occur at Defendant's northern California location.  As these sources of proof are likely to be most important to analyzing Plaintiff's patent infringement claims, this factor weighs in favor of transfer.").

## II.     THE PUBLIC INTEREST WEIGHS IN FAVOR OF TRANSFER.

Because the private interests support a transfer to Washington, this Court need not even consider the public interest factors.  *See Geltech Solutions*, 2010 WL 1791423, at *7 ("Public interest factors may only be considered if the private factors are even or neutral.") (citing *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1298 (11th Cir. 2009)).  Nonetheless, the public interest factors likewise point to Washington.  In considering the "interests of justice," courts consider relative court congestion, the local interest in having localized controversies decided at home, and the unfairness in burdening citizens in an unrelated forum with jury duty.  *Trace-Wilco*, 2009 WL 455432, at *2; *see also Geltech Solutions, Inc. v. Marteal, Ltd.*, No. 09-CV-81027, 2010 WL 1791423, at *7 (S.D. Fla. May 5, 2010) ("Public interest factors are those reasons related to the forum:  the familiarity of the court with the applicable law, the connection with the chosen forum (in order to avoid juries having to hear cases which are wholly unrelated to local interests), and a host of other factors relating to judicial efficiency.").

First and foremost, the Southern District of Florida has no particular local interest in trying this case.  The burden of jury duty "ought not to be imposed upon the people of a

community which has no relation to the litigation." *Nolan Helmets*, 1995 WL 789505 at *2; *see also Cellularvision*, 508 F. Supp. 2d at 1192.  Residents of the Western District of Washington have a substantial interest in resolving Motorola's claims that Microsoft has infringed the patents-in-suit.  Microsoft is one of the largest employers in the Puget Sound region.  Residents of Washington have an interest in resolving disputes over the validity of Microsoft's patents or Microsoft's products, as such claims have an impact on the viability and strength of such a large local source of employment.  *See Hoffman-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (finding that the district had a strong local interest in the case because the patent-infringement cause of action called into question the work and reputation of several individuals residing in or near the district).

Second, public interest favors consolidated litigation, particularly in patent cases.  In *Global Innovation*, this Court recognized that "trial efficiency and the interests of justice especially favor consolidated litigation in patent cases."  *Global Innovation Tech. Holdings, LLC v. Acer Am. Corp.*, 634 F. Supp. 2d 1346 (S.D. Fla. 2009); *see also* WDWA-343 Transfer Order at p. 4 (Attorney Decl. at ¶ 8, Ex. 7) ("factual overlap" between WDWA-343 and WDWA-1823 "is another reason the balance favors Washington").  Transferring this case will allow better coordination with the multiple cases in the Western District of Washington, particularly given the number of overlapping factual issues between this case and those in the Western District of Washington.

For example, one of the primary products under attack in this case is Windows 7.  The WDWA-343 case also involves patent infringement claims related to Windows 7.  *See* WDWA-343 Transfer Order at p. 3 (Attorney Decl. at ¶ 8, Ex. 7) (noting Windows 7 is a product at issue in that case and was designed in Washington).  While the specific accused technology in each

15

case is different because each patent covers a different "invention," many of the witnesses – *e.g.*, the marketing, advertising, sales, product management, and finance personnel who work on the Windows 7 product – are likely to be the same.  As the Western District of Wisconsin already recognized in transferring the WDWI-699 (now WDWA-343) case to the Western District of Washington, "at least one of the accused products (Windows 7) was designed [in the Western District of Washington].  Defendant's employees responsible for the development and sale of Windows 7 work in that district." *Id*.

Furthermore, in its counterclaims in this case, Microsoft accuses Motorola of violating various Microsoft-held patents in connection with the Motorola Android devices.  D.E. 21. Many of the same products are at issue in the WDWA-595 and WDWA-343 cases.  *See* D.E. 37 in 3:10-cv-00699-wmc; D.E. 7 in 3:10-cv-00826-wmc (Attorney Decl. at ¶¶ 5, 7; Exs. 4, 6). This overlap of products implicates many of the same relevant witnesses in this case as those pending in the Western District of Washington.  For example, Motorola has disclosed the same program managers for the Droid phones in both this case and WDWA-595.  Motorola's Initial Disclosures, at p. 6; Motorola's Initial Disclosures in WDWA-595, at p. 5.  (*Id.* at ¶¶ 12, 15; Exs. 13, 16).

Moreover, although the patents involved between the cases are not identical, in many instances the technologies at issue are similar.  For example, two of the Microsoft patents at issue in this case ('536 and '853) relate to detecting user input on a touch screen.  D.E. 21 at ¶¶ 8,9. Similarly, the Microsoft '582 patent (at issue in WDWA-343) also relates to detecting user input on a touch screen.  D.E. 37 in 3:10-cv-00699-wmc at ¶ 10 (Attorney Decl. at ¶ 5, Ex. 4).  The Microsoft '460 patent – directed to the use of timers and alarms – is also at issue in this case. D.E. 21 at ¶ 12.  The Microsoft '276 patent (at issue in WDWA-595) is also directed to the use

of timers and alarms.  D.E. 7 in 3:10-cv-00826-wmc at ¶ 7 (Attorney Decl. at ¶ 7, Ex. 6).  The

Microsoft '460 patent at issue in this case and the Microsoft '642 patent (at issue in WDWA-

595) both deal with Linux kernel code.  D.E. 21 at ¶ 12; D.E. 7 in 3:10-c-00826-wmc at ¶ 11

(Attorney Decl. at ¶ 7, Ex. 6).  As Motorola has recognized, "the interests of justice analysis

involves the consideration of factors relating to the efficient administration of the court system."

*See* Motorola's Brief in Support of Transfer at p. 16 (Attorney Decl. at ¶ 10, Ex. 9) (quoting

*Kraft Foods Holdings, Inc. v Proctor & Gamble Co.,* No. 07-613, 2008 WL 4559703 at *3-4

(W.D. Wis. Jan. 24, 2008)).  Given this overlap in issues, products and technologies that pertain

to the disputed patents, as well as the lack of interest that Florida residents have related to this

case, an analysis of the various public interest factors at issue in this case weigh heavily in favor

of transfer.[9]  *See Florida v. Jackson*, No. 3:10cv503/RV/MD, 2011 WL 679556, at *4 (N.D. Fla.

Feb. 15, 2011) (granting motion to transfer, noting that "[a]lthough the cases filed in Pensacola

and the two earlier-filed cases in Tallahassee are not identical - and may involve different claims

and issues - there is obviously substantial overlap between them.  There is thus a real risk that

different judges in different divisions will be making separate and potentially inconsistent

findings of fact and conclusions of law in closely-related actions") (citation omitted); *SOC-USA,*

*LLC v. Office Depot, Inc.*, No. 09-80545-CIV, 2009 WL 2365863, at *4 (S.D. Fla. July 30, 2009)

("there is no reason for both courts to devote their limited resources to similar Markman hearings

---

[9]   The public interest factor also considers the relative congestion of each court's docket.  The
median time from filing to disposition in civil cases in this district is 4.3 months, and the median
time from filing to trial is 15.7 months.  (S.D. Florida and W.D. Washington judicial caseload
profiles, available at: www.uscourts.gov/cgi-bin/cmsd2009.pl).  In the Western District of
Washington, the median time from filing to disposition is 6.7 months and the median time from
filing to trial is 19 months.  This time difference is not significant, and there are currently judicial
vacancies in this District.  Moreover, docket conditions are a "minor consideration when other
factors would result in a transfer of venue."  *Trace-Wilco*, 2009 WL 455432 at *4.  *See also*
*Castleberg v. Davidson*, No. 10-cv-647-bbc (W.D. Wis. Dec. 30, 2010) (difference of 12 months
in average time to trial not dispositive on 1404 transfer issues).

and trials on substantially overlapping factual and legal patent infringement issues, even if there will be some additional claims added by the transfer of the instant action"); *Breckenridge Pharm., Inc. v. KV Pharm. Co.*, No. 08-80963-CIV, 2009 WL 1404698 at *4 (S.D. Fla. May 19, 2009) ( "[g]iven the overlap between" the cases, many of the witnesses would be required to testify in Florida and Missouri, a situation "not conducive to their convenience or consistent with notions of judicial economy or efficiency"); *Cordis Corp. v. Siemens-Pacesetter, Inc*., 682 F. Supp. 1200, 1202 (S.D. Fla. 1987) ("Because four related litigations involving these defendants and others are pending in the Central District of California, transfer of this case to California will result in more efficient pre-trial discovery, savings of time and money with respect to pre-trial and trial proceedings involving witnesses, avoidance of duplicative litigation, and avoidance of inconsistent results."); *Broadcom Corp. v. Agere Sys. Inc.*, No. 04-066, 2004 WL 1176168 at *3 (W.D. Wis. May 20, 1994) (noting the transferee forum's "familiarity with the general technology behind the patents at issue") (cited in Motorola's Brief in Support of Transfer, p. 15).

There is no overriding public interest that should require this Court to adjudicate this action here, especially when the administrative burden and resources required to adjudge such a complex case could be streamlined with cases already pending in the Western District of Washington.[10]  In addition, there has been no substantial activity in this case that would prevent this Court from transferring the case to Washington.  There have been no other contested motions requiring resolution by the Court.  Nor has this Court been required to issue any rulings or orders other than entry of the protective order and scheduling-related orders.

---

[10]   This consideration applies to *Markman* issues as well.  It would be more efficient for the Western District of Washington, which already has a need to conduct *Markman* hearings in conjunction with many of these same technologies, to adjudicate the additional claim construction issues that relate to this case as well.

## <u>CONCLUSION</u>

For the reasons stated above, Motorola's patent infringement claims should be transferred to the Western District of Washington pursuant to 28 U.S.C. § 1404.

## <u>CERTIFICATE PURSUANT TO LOCAL RULE 7.1</u>

Pursuant to S.D. Fla. L.R. 7.1(a)(3), the undersigned counsel certifies that prior to the filing of the instant motion, the parties conferred telephonically in a good faith effort to resolve the issues raised herein, but were unable to do so.

Dated: May 19, 2011

Respectfully submitted,

COLSON HICKS EIDSON
Roberto Martinez, Esq.
Curtis Miner, Esq.
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Tel. (305) 476-7400
Fax. (305) 476-7444

By:  _s/ Curtis B. Miner_____
        Curtis B. Miner
        (Fla. Bar No. 885681)
        E-mail: curt@colson.com

SIDLEY AUSTIN LLP
David T. Pritikin
Richard A. Cederoth
Douglas I. Lewis
John W. McBride
One South Dearborn
Chicago, IL  60603
Tel. (312) 853-7000

Brian R. Nester
Kevin C. Wheeler
1501 K Street NW
Washington, DC  20005
Tel. (202) 736-8000

19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 19th day of May, 2011, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will automatically send email notification of such filing to all counsel who have entered an appearance in this action.

/s/   Curtis B. Miner
Curtis B. Miner

## SERVICE LIST

*Motorola Mobility, Inc. v. Microsoft Corp.*, Case No. 1:10-cv-24063-Moreno

Edward M. Mullins, Esq.
Hal M. Lucas
ASTIGARRAGA DAVIS
701 Brickell Avenue, 16th Floor
Miami, FL 33131
Tel.: (305) 372-8282

Steven Pepe
Jesse J. Jenner
Leslie M. Spencer
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036-8704
Tel.: (212) 596-9046

Norman H. Beamer
Mark D. Rowland
Gabrielle E. Higgins
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303-2284
Tel.: (650) 617-4030

Kevin J. Post
Megan F. Raymond
ROPES & GRAY LLP
One Metro Center
700 12th Street NW, Suite 900
Washington, DC 20005-3948
Tel.: (202) 508-4600

*Counsel for Plaintiff Motorola Mobility, Inc.*